IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| KENESHA DANAE MARTIN, | § | |
| | § | |
| *Plaintiff*, | § | 5-19-CV-00573-FB-RBF |
| | § | |
| vs. | § | |
| | § | |
| ANDREW SAUL, COMMISSIONER, | § | |
| SOCIAL SECURITY; | § | |
| | § | |
| *Defendant*. | § | |
| | § | |
| | § | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

**To the Honorable United States District Judge Fred Biery:**

This Report and Recommendation concerns Plaintiff Kenesha Danae Martin's request for judicial review of the administrative denial of her application for disability-insurance benefits under Title II of the Social Security Act. This action was referred pursuant to 28 U.S.C. § 636(b), Rule 1(h) of Appendix C to the Local Rules, and the docket-management order entered on October 8, 2019,[1] in the San Antonio Division of the Western District of Texas. This Court has jurisdiction to review a final decision of the Social Security Administration. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Authority to enter this recommendation stems from 28 U.S.C. § 636(b)(1)(B).

---

[1] This action was originally referred on May 28, 2019, pursuant to the docket management order entered on September 29, 2017. The September 29, 2017, docket management order, however, has been superseded by the October 8, 2019, docket management order, although this didn't alter the scope of the referral.

This case involves an unexplained and unexplored incongruity involving two key pieces of information in the administrative record. On one hand, the Administrative Law Judge's (ALJ) residual-functional-capacity determination indicates that claimant Martin is capable of "only performing simple jobs rather than complex or detailed jobs." Contrast that with the vocational expert's testimony, on the other hand, that reflects Martin should be able to work because there are jobs available in the economy and listed in the Dictionary of Occupational Titles (DOT) that, by definition, require the ability to carry out detailed instructions. The disconnect between a limitation to "only . . . simple jobs rather than complex or detailed jobs" and the testimony that jobs are available to the claimant even though they require following detailed instructions should have been explored and explained during agency proceedings. Accordingly, as discussed further below, the Commissioner's decision should be **REVERSED** and this matter should be **REMANDED** for further consideration.

## Factual and Procedural Background

Plaintiff Kenesha Danae Martin filed her application for disability-insurance benefits on June 1, 2017, alleging a disability onset date of August 10, 2015. Tr. 252. Martin's claims were initially denied, *id.* 167-171, and so was her attempt at obtaining reconsideration, *id.* 172-78. Martin then requested and received an administrative hearing. *Id.* 183-85. She and her attorney attended the hearing, and Martin and vocational expert Howard Marnan testified at it. *Id.* 95-139. The vocational expert testified that a hypothetical individual of Martin's age, education, and experience with the following abilities and limitations couldn't perform Martin's past relevant work as a call-center bill-adjustment clerk, call-center insurance clerk, or call-center claims clerk:

> Capable of sedentary or light work, lifting and carrying twenty pounds occasionally and ten pounds frequently; standing, walking, and sitting each six

hours in an eight-hour workday. No unprotected heights, no unprotected hazards. No climbing of ropes, ladders or scaffolds. No overhead reaching with the dominant harm, occasional use of the non-dominant arm; no very heavy pollutants. *Capable of only performing simple jobs rather than complex or detailed jobs*, and little interaction with others.

*Id.* 132-34 (emphasis added).

But according to the vocational expert, a hypothetical individual with those same restrictions could perform the following alternative jobs existing in significant numbers in the national economy: (1) gate guard at an industrial site (DOT 372.667-030); (2) school-bus monitor (DOT 372.667-042); (3) night watchman (DOT 372.667-034); and (4) cashier working on a stool in a parking garage (DOT 211.462-010)—all jobs at the light exertional level as classified by the DOT and ranging from unskilled to semi-skilled work. *Id.* 134-36. More specifically, the school-bus monitor and cashier positions are both unskilled under the DOT, while the gate-guard and night-watchman jobs have a specific vocational preparation (SVP) of 3, meaning they involve semi-skilled work. Nevertheless, the vocational expert classified the positions identified as unskilled, reasoning that a gate guard at an industrial site doesn't need to conduct any inspections and the only duty of a night watchman at a warehouse or construction site is to be present, obvious, and call for help if necessary; a weapon in this context isn't needed. *See id*. Aside from inquiring whether the vocational expert considered any factors or limitations beyond those provided in the ALJ's hypothetical question, Martin's attorney didn't cross-examine the vocational expert on any topic. *See id.* 137-38.

On October 25, 2018, the ALJ denied Martin's claim for disability benefits. *Id.* 44-63. In his analysis, the ALJ found that Martin meets the insured-status requirements of the Social Security Act, and the ALJ then applied the five-step sequential analysis required by the regulations. *See id*. At step one, the ALJ found Martin hasn't engaged in substantial gainful

activity since the alleged onset date of August 10, 2015. *Id.* 45-47. At step two, the ALJ found Martin has the following severe impairments: discoid lupus erythematosus, a history of left humeral fracture status-post open reduction and internal fixation, mild left acromioclavicular degenerative joint disease, asthma, major depressive disorder, and post-traumatic stress disorder. *See id.* 47. At step three, the ALJ found that none of Martin's impairments meet or medically equal the impairments of one of the listed impairments in the applicable Social Security regulations. *Id.* 47-49. Before reaching step four, the ALJ found Martin has the physical and mental residual functional capacity to:

> [L]ift and carry 20 pounds occasionally, and 10 pounds frequently; and stand, walk and sit for six hour[s] in an eight-hour workday. [She] is limited to no unprotected heights or unprotected hazards. [She] is limited to no climbing ropes, ladders or scaffolds. [She] is limited to no overhead reaching with the non-dominant left arm, and occasional use of the non-dominant left arm.[She] is limited to no exposure to very heavy pollutants. [She] is limited to *simple jobs that are not detailed or complex jobs*, and little interaction with others.

*Id.* 49-50 (emphasis added).

At step four, after considering the residual-functional-capacity determination and the testimony of the vocational expert, the ALJ concluded that Martin isn't able to perform her past relevant work as actually or generally performed. *Id.* 62.

But at step five, relying on the vocational expert's testimony, the ALJ found that considering Martin's age, educational factors, prior work experience, and residual functional capacity, Martin can perform the following jobs existing in significant numbers in the national economy: (1) gate guard at an industrial site (Dictionary of Occupational Titles (DOT) 372.667-030); (2) night watchman (DOT 372.667-034); and (3) cashier working on a stool in a parking garage (DOT 211.462-010). Accordingly, the

ALJ determined that Martin is not disabled for purposes of the Act and therefore not entitled to receive benefits. *Id.*

The Appeals Council denied Martin's subsequent request for review of the ALJ's finding. *Id.* 1-7. Martin sought judicial review. Dkt. No. 1.

## Analysis

Remand is required to address an error that occurred at step five in the ALJ's analysis. At step five, the Commissioner bears the burden to show there is other gainful employment available in the national economy that the claimant is capable of performing. *See Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987). Because Martin suffered from additional limitations that made the Medical-Vocational Guidelines inapplicable, the ALJ relied on testimony from the vocational expert in making the step-five determination. But as discussed further below, the vocational expert's testimony can't be reconciled with the DOT without further investigation and explanation, and the ALJ failed to investigate or provide further information about the incongruity between the testimony and DOT. This error was harmful and necessitates a remand. Martin's other points of error need not be addressed.

A.      *The Vocational Expert's Testimony and the DOT Cannot Be Reconciled on This Record.* Social Security Regulations permit ALJs to rely on job information in the DOT and its supplement, the Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles (SCO), when making their step-five determinations. *See* 20 C.F.R. § 404.1566(d). But "the DOT is not comprehensive, in that it cannot and does not purport to include each and every specific skill or qualification for a particular job." *Carey v. Apfel*, 230

F.3d 131, 145 (5th Cir. 2000). "The value of a vocational expert is that he [or she] is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed." *Id.* (quotations omitted). "It is, therefore, foreseeable (if not inevitable) that in some cases a vocational expert's opinion may, as to a particular claimant's ability to perform alternative work, conflict with the DOT's explication of the requirements for particular jobs." *Gaspard v. Soc. Sec. Admin. Com'r*, 609 F. Supp. 2d 607, 613 (E.D. Tex. 2009).

The Fifth Circuit has talked about these situations as presenting the possibility for various types of conflicts in the record evidence, which have been labeled as "direct and obvious" or actual on one hand, or "tangential," "implied or indirect" on the other. *Carey*, 230 F.3d at 145, 146. A direct and obvious conflict, the Fifth Circuit has explained, may arise in at least two different ways:

> First, the vocational expert may testify that a particular job requires a particular exertional or skill level, when the DOT expressly provides that the job requires a different exertional level. With this most direct and obvious type of conflict, the ALJ is asked to accept the vocational expert's testimony, even though that testimony is in actual conflict with the provisions of the DOT, which is routinely relied upon by the responsible agency. A second, and different type of [direct and obvious] conflict may arise when the vocational expert's testimony places the ALJ's finding with respect to the claimant's residual functional capacity or the claimant's specific impairments in conflict with the exertional or skill level or the specific skills required for the identified jobs in the DOT.

*Id.* at 144 n.2.

Conversely, "[a] tangential, implied or indirect conflict occurs when there is no direct conflict between the expert testimony regarding the exertional or skill level [or reasoning ability] required for a particular job and the Dictionary of Occupational Titles, but additional inferences can be drawn (and the plaintiff is asking the court to draw them on appeal) that the Dictionary of Occupational Titles description may conflict with the vocational expert's testimony that the claimant is capable of performing a particular job." *Johnson v. Astrue*, No. CIV.A. 11-3030,

2012 WL 5472418, at *9 (E.D. La. Oct. 5, 2012), *report and recommendation adopted*, 2012 WL 5472303 (E.D. La. Nov. 9, 2012). The variety of labels attached to various "conflicts" in this setting is confusing and not particularly helpful in close cases, such as the present case.

The difficulties presented by these cases is further exacerbated by yet another label attached by the Commissioner to conflicts in these circumstances, that of an "apparent conflict." *See* SSR 00-4P, 2000 WL 1898704. How one draws a meaningful distinction between or differentiates in any kind of principled way between direct, tangential, apparent, indirect, implied, and obvious conflicts is not entirely clear. The better approach is to dispense with unthinking reliance on formalistic labels and instead to focus in more difficult cases on whether the record reflects substantial evidence to support the ALJ's conclusions notwithstanding any conflict(s) in the record. *See Carey*, 230 F.3d at 146. Indeed, when a tangential or "implied or indirect conflict" is presented, the Fifth Circuit's rule is "that the ALJ may rely upon the vocational expert's testimony provided that the record reflects an adequate basis for doing so." *Id.*

Here, the vocational expert testified there are jobs available to Martin, which according to their listings in the DOT require carrying out *detailed* instructions, but at the same time the ALJ's residual-functional-capacity finding reflects that Martin "is limited to simple jobs that are *not detailed*." Tr. 49-50 (emphasis added). To unpack matters further, this issue arises because the hypothetical question posed to the vocational expert (that the ALJ in turn adopted as Martin's residual functional capacity) restricted Martin to performing "simple jobs rather than complex or detailed jobs." Yet all of the jobs identified in response by the vocational expert as being available to Martin are classified in the DOT as requiring a level 3 reasoning ability. Reasoning at level 3 is defined in the DOT as the ability to "[a]pply commonsense understanding to carry

out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations." DOT Appendix C. Level 3 reasoning also surely encompasses reasoning at level 2, which requires the ability to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions. *Id*.

The circumstances presented lead one, at a minimum, to ask, "Can someone who is not able to perform a detailed job be expected to perform a job that requires carrying out detailed instructions?" The record, however, reflects to no investigation of that question or resolution of it before the ALJ adopted the vocational expert's testimony and foreclosed relief to Martin. Whether this circumstance is properly characterized as involving a "direct and obvious" conflict, an apparent conflict, or merely a "tangential," "implied," or "indirect" one seems beside the point because the issue calls for an explanation and yet it wasn't explored or resolved. Indeed, the vocational expert didn't identify the issue at all and instead incorrectly stated without any elaboration, in response to the ALJ's questioning, that the DOT is consistent with the vocational expert's testimony. *See* Tr. 137. Although the expert also noted that most of his testimony was based on his education and experience, *see id.*, he didn't explain what part of his testimony departed from or didn't fully jibe with the DOT. He also didn't say why—based on his education and experience—the jobs he identified weren't detailed or complex jobs given that they required the ability to carry out detailed (albeit uninvolved) instructions.

Although "DOT job descriptions should not be given a role that is exclusive of more specific vocational expert testimony with respect to the effect of an individual claimant's limitations on his or her ability to perform a particular job," *Carey*, 230 F.3d at 145, without some explanation for this conflict, on this record the probative value of the vocational expert's testimony is so lessened that remand for lack of substantial evidence should follow, *id.* at 147.

Even if this case involves merely a "tangential" conflict, there is still lacking on this record the required "adequate basis for" looking past the present issue and accepting the vocational expert's testimony. *Id.* at 146.

The failure to explore and explain this issue is highlighted by another explanation offered by the vocational expert. Notably, the vocational expert identified and explained an issue with respect to the skill level of the gate-guard and night-watchman jobs. Nothing like that occurred with respect to the discrepancy regarding the level of detail required by the jobs identified as available for Martin to perform. Moreover, because reasoning levels and skill levels are distinct concepts, the explanation offered with respect to skill levels doesn't assist the Commissioner's position here:[2]

> The information listed in the DOT is meaningful and the reasoning development levels that it identifies should not be ignored or disregarded. While the SVP levels in the DOT indicate the skill level of an occupation, the reasoning development levels identify the reasoning capabilities that the occupation requires for its execution.

*Hardin v. Astrue*, No. 3:10-CV-1343-B BH, 2011 WL 1630902, at *8 n.5 (N.D. Tex. Mar. 31, 2011), *report and recommendation adopted*, 2011 WL 1633132 (N.D. Tex. Apr. 29, 2011).

The Commissioner is unpersuasive in urging that no conflict—either direct or otherwise— requiring reversal is presented because the reasoning levels in the DOT don't neatly align with an ALJ's residual-functional-capacity determination. *See* Comm'r Br. at 12-13. It is also beside the point that a majority of courts have found no conflict (or at least no conflict requiring further investigation or explanation) when jobs identified by the vocational expert require level 3 reasoning even though there's also a limitation to simple, repetitive, and routine tasks. *See* Comm'r Br. at 12-13. The ALJ here didn't just restrict Martin to simple jobs; he also

---

[2] *Cf.* Comm'r Br. at 13-14 (arguing that the vocational expert resolved any conflict when he classified the jobs of security guard and night watchman as unskilled).

limited her to jobs that are "not detailed or complex." Moreover, at issue here are the specific jobs identified as available to Martin and her specific residual-functional-capacity determination, which cannot be reconciled on this record. Every job identified here by the vocational expert calls for the ability to carry out "detailed" instructions. Perhaps there's a semantic distinction between a detailed job and one that involves carrying out detailed instructions but otherwise isn't itself detailed. But that distinction stretches things too thin. And relying on it ignores the Fifth Circuit's instruction that "neither the DOT nor the vocational expert testimony is per se controlling" and that, instead, courts should focus on the "pertinent issue" of whether there is "substantial evidence supporting the Commissioner's determination that this particular person can do this particular job or group of jobs." *Carey*, 230 F.3d at 147. Without some kind of additional explanation from the vocational expert, there's nothing in the record to explain how it makes any sense that Martin cannot perform jobs that are detailed or complex but she's appropriately called upon to carry out detailed instructions when working.

    None of the cases cited by the Commissioner in support of upholding the denial of benefits here is directly on point, let alone controlling. Further, it can't be the rule that there can *never* be a conflict between the DOT and a vocational expert's testimony sufficient to require remand for an explanation.[3] Such a rule would eviscerate the Fifth Circuit's directive that direct and obvious conflicts should be explained and resolved, *see Carey*, 230 F.3d at 145-46, as well as the Commissioner's own Ruling, which places an "affirmative responsibility" on an ALJ to address and remedy an "apparent conflict" before relying on a vocational expert's testimony, SSR 00-4P, 2000 WL 1898704.

---

[3] *See Thomas v. Berryhill*, 881 F.3d 672, 678 (8th Cir. 2018) (noting that regardless of the generic character of the DOT's job descriptions, "an ALJ may not rely on unexplained expert testimony that someone with a particular RFC [residual functional capacity] is qualified to do a job that the DOT describes as exceeding it.").

Accordingly, even if this case doesn't involve a direct conflict, it would at a minimum involve, in the Commissioner's terminology, an "apparent" conflict where a residual-functional-capacity ruling "seems to, but does not necessarily conflict with the DOT." *Everhart v. Comm'r of Soc. Sec.*, No. 3:17-CV-188-DAS, 2018 WL 3614196, at *2 (N.D. Miss. Jul. 27, 2018) (defining the term "apparent" as used in SSR 00-4P). Under the Commissioner's own policy— which though not binding on the Court is binding on the Administration[4]—the ALJ was required to elicit a "reasonable explanation" for the "conflict" and then resolve it. This would require the ALJ to determine whether the expert's testimony warranted reliance despite the information in the DOT, and it would further require the ALJ to explain in the written decision how that issue (*i.e.*, the apparent conflict) was resolved "irrespective of how the conflict was identified." SR 00-4P. Here, there's an issue (at least an "apparent" conflict) that was never identified by the ALJ, let alone resolved.[5] Indeed, the ALJ's decision reflects the mistaken impression that the vocational expert's testimony was entirely consistent with the DOT. *See* Tr. at 62 ("Pursuant to SSR 00-4p, the undersigned has determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles.").

Under these circumstances, prejudice is self-evident such that remand is required because there is no way to know whether the DOT or the vocational expert's testimony should control. If the DOT were to control, then the identified jobs don't appear to have been suitable for Martin given her limitations. "In other words, had the vocational expert identified the conflict for the ALJ, he might have determined that the DOT should prevail if the vocational expert's

---

[4] *See Dunn v. Colvin*, No. 4:12-CV-496-Y, 2013 WL 4756377, at *5 (N.D. Tex. Sept. 4, 2013).

[5] *See Everhart*, 2018 WL 3614196, at *3 (merely asking the vocational expert whether his testimony is consistent with the DOT and SCO and receiving a positive response without any further explanation isn't sufficient to comply with SSR 00-4p).

explanation had been unsatisfactory." *Olive v. Colvin*, No. CV 16-559, 2017 WL 1653303, at *8

(E.D. La. Mar. 31, 2017), *report and recommendation adopted*, 2017 WL 1592488 (E.D. La.

Apr. 28, 2017).[6] Likewise, if the conflict had been identified and explored, the vocational expert

may have been able to adequately explain why the jobs were perfectly suitable for Martin

notwithstanding her limitations. But "[t]he ALJ's decision must stand or fall with the reasons set

forth in the ALJ's decision, as adopted by the Appeals Council." *Newton*, 209 F.3d at 455.

Without some explanation for the conflict, the Court cannot conduct a meaningful judicial

review.

        B.    *Martin Hasn't Forfeited Her Complaint About the ALJ's Failure to Explore or
Explain the Conflict*. Martin didn't forfeit her complaint in this Court about the ALJ's error when

she failed to raise that error during the administrative proceedings. The seminal case on this type

of forfeiture, and the only case cited in the Commissioner's brief on this topic, is *Carey v. Apfel*.

Although *Carey*'s holding is not based on a finding of forfeiture—but instead on the fact that

substantial evidence supported the ALJ's finding—*Carey* has been cited, according to the

Westlaw database, over 250 times (as of the date of this Order) for the proposition that

"claimants should not be permitted to scan the record for implied or unexplained conflicts

between the specific testimony of an expert witness and the voluminous provisions of the DOT,

and then present that conflict as reversible error, when the conflict was not deemed sufficient to

merit adversarial development in the administrative hearing." *Carey*, 230 F.3d at 146-47. The

Commissioner invokes this language from *Carey* in support of a bright-line forfeiture rule in

---

[6] *See also Newton v. Apfel*, 209 F.3d 448, 458 (5th Cir. 2000) ("Prejudice can be established by
showing that additional evidence would have been produced if the ALJ had fully developed the
record, and that the additional evidence might have led to a different decision").

these circumstances. The Fifth Circuit has cited *Carey* at least six times for something akin to this proposition, including in one published decision.

A closer look at *Carey* and the Fifth Circuit decisions citing it reveals why there is no forfeiture requiring enforcement here. In *Carey*, although the Court noted the petitioner's failure to explore the conflict on cross-examination of the vocation expert, that failure (*i.e.*, the alleged forfeiture) didn't result in the adoption of a bright-line forfeiture rule applicable to every species of conflict between a vocational expert's testimony and the DOT. Rather, the Court's holding adopted a "middle ground position," like the Ninth and Tenth Circuits, under which an ALJ is justified in relying on the vocational expert's testimony that impliedly, indirectly, or tangentially conflicts with the DOT, "provided that the record reflects an adequate basis for doing so." *Id*. at 147. The Court further noted that more direct conflicts might warrant remand "for further explanation." *Id*.

This approach has common-sense on its side, and it's also consistent with the aforementioned rule for tangential conflicts announced in *Carey*. On the one hand, claimants shouldn't be permitted to Monday-morning quarterback the vocational expert's testimony to flyspeck attenuated, insignificant, or hyper-technical "conflicts" that are then raised for the first time in federal court. But on the other hand, claimants can't be expected to police every aspect of an interchange between a vocational expert and an ALJ that occurs while the ALJ performs his or her obligation to identify available jobs in the economy and ensure that they are consistent with a claimant's residual functional capacity. Imagine for a moment what preserving error in these circumstances would look like, if the Commissioner's hardline forfeiture rule were adopted. Counsel for claimants, or claimants themselves if proceeding pro se, would be forced to cross-examine vocational experts on every hypothetical entertained, and in doing so cross

reference the "voluminous provisions of the DOT" with every job mentioned by the experts. Keep in mind that an ALJ might rattle off 3 or even 5 or 6 hypotheticals to a vocational expert. In response to each, the vocational expert provides a list of jobs, often with varying requirements and demands. All of this, of course, would need to be done on the fly. Surely the better approach for everyone involved is allowing *significant* issues to be raised in district court even when they weren't spotted and explored by claimants or ALJs during a hearing. Remand is surely required whenever nothing in the record permits the jobs identified by the vocational expert to be reconciled with the residual-functional-capacity finding in a significant, meaningful way. That is what *Carey* demands.

Post-*Carey* Fifth Circuit decisions meaningfully citing *Carey* on the forfeiture issue are either inapposite to the present issue or reflect a restrained, nuanced application of the forfeiture doctrine that is applied here. To start, the only Fifth Circuit published decision citing *Carey* on this topic, *Graves v. Colvin*, 837 F.3d 589, 593 (5th Cir. 2016), addresses a claimant's responsibility to show that an error in this context is harmful by demonstrating "that the vocational expert's testimony was actually inconsistent with the DOT." It offers little insight pertinent to the present discussion. The unpublished Fifth Circuit decisions post-*Carey* on this topic also do nothing to support the Commissioner's hardline forfeiture position. For example, in *Dell v. Saul*, the Court declined to grant relief in response to an argument that "there *might be* methodological problems with the vocational expert's job data." 807 Fed. App'x 385 (5th Cir. 2020) (Mem. Op.) (emphasis in original). Indeed, the claimant failed in the appellate court even "to point to any data that conflicts with or undermines the [vocational] expert's testimony." *Id*. *Dell*, in other words, involved only an imagined conflict. *Id*. Other unpublished decisions from

the Fifth Circuit similarly do not support the Commissioner's forfeiture argument.[7] Finally, some lower-court decisions in this area also have noted the limited, more nuanced nature of *Carey*'s forfeiture discussion. *See, e.g.*, *Romine v. Barnhart*, 454 F. Supp. 2d 623, 630 (E.D. Tex. 2006) (distinguishing *Carey*, which involved "merely an alleged conflict," from a case involving a direct or apparent conflict).[8]

Ultimately, *Care*y stands for the notion that the record must "reflect[] an adequate basis for the ALJ relying on the vocational expert's testimony." *Everhart*, 2018 WL 3614196, at *3 (quoting *Carey*, 230 F.3d at 146-47). In *Carey*, for example, the vocational expert provided "clear and unchallenged testimony that Carey could perform the identified jobs," notwithstanding the skill requirements listed for those jobs in the DOT. 230 F.3d at 147. Such an explanation, the Fifth Circuit explained, was "adequate, in the context of th[e] record as a whole, to support the ALJ's determination that Carey could perform other available work." *Id.* No such explanation was provided here; the vocational expert didn't testify that the alternative jobs he identified don't require detailed or complex reasoning in this context. In fact, he didn't mention reasoning levels at all.

Where, as here, the burden is on the Commissioner at step five to show that a claimant such as Martin can perform alternative available work, it is difficult to understand how a plaintiff

---

[7] *See also, e.g.*, *Barratt v. Astrue*, No. 07-51067, 2008 WL 2325636 (5th Cir. 2008) (noting and discussing the "adequate basis for the ALJ's reliance on the [vocational expert's] testimony" and citing the forfeiture language from *Carey* only as an add-on to that discussion); *Bryant v. Astrue*, 272 Fed. App'x 352, 356 (5th Cir. 2008) (per curiam) (noting that despite a general description in the DOT regarding jobs of a certain exertional level, "the vocation expert testified . . . that all of the jobs she cited were at the 'sedentary, unskilled level,'" which made them consistent with the claimant's residual functional capacity); *Harvey v. Astrue*, 228 Fed. App'x 390, 392 (5th Cir. 2007) (similar); *White v. Astrue*, 240 Fed. App'x 632, 634 (5th Cir. 2007) (similar).

[8] *See also Everhart*, 2018 WL 3614196, at *3 (drawing a similar distinction); *Olive*, 2017 WL 1653303, at *8 (same).

forfeits error involving a *significant* conflict or problem with the record (not a miniscule, tangential one) by failing to demand that the ALJ act consistent with the Commissioner's own Rulings and both identify and resolve conflicts and fully develop the record. *See, e.g.*, *Romine*, 454 F. Supp. 2d at 630 (noting that district courts "should proceed cautiously" in finding forfeiture of a "facial and apparent" conflict because the burden at step five is on the Commissioner).

In any event, on the present briefing, the Commissioner—as the party arguing in favor of forfeiture—asks too much of the Court. To start, the Commissioner's brief refers to Martin having waived this challenge, and to be fair some of the decisions in this area (including some cited herein) also speak in terms of a "waiver" rather than "forfeiture." *See, e.g.*, *Everhart*, 2018 WL 3614196, at *3; *Olive*, 2017 WL 1653303, at *8 & n.4. But "[w]aiver is different from forfeiture. Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the intentional relinquishment or abandonment of a known right." *United States v. Olano*, 507 U.S. 725, 733 (1993). There is no meaningful argument presented here that Martin "waived" her ability to challenge the conflict by intentionally relinquishing or abandoning a known right. At issue here instead is an alleged forfeiture.

As the party invoking a forfeiture to foreclose consideration of a point of error, the Commissioner should address and develop the forfeiture issue to such an extent that the Court and the opposing party are placed on notice of the issue and its necessary contours. *See, e.g.*, *Cent. Sw. Texas Dev., L.L.C. v. JPMorgan Chase Bank, Nat'l Assoc.*, 780 F.3d 296, 301 (5th Cir. 2015) (discussing appellate wavier or forfeiture). Merely asserting a boilerplate "waiver" or "forfeiture" argument via an under-developed argument that doesn't explain why the forfeiture

principle mentioned in dicta in *Carey* must apply in this context does little to aid the Court in its determination.

### Conclusion and Recommendation

For the reasons discussed above, it is recommended that the Commissioner's decision be reversed and the case be remanded so that the ALJ can fully develop the record by identifying and resolving any inconsistencies between the job requirements identified by the vocational expert and the DOT to determine whether Martin is capable of performing work that exists in substantial numbers in the national economy. In the interests of judicial efficiency, the remand should also be broad enough to allow the ALJ to also consider Martin's other points of error that have not been addressed in this Order, to the extent appropriate.

Having considered and acted upon all matters for which the above-entitled and numbered case was referred, it is **ORDERED** that the above-entitled and numbered case is **RETURNED** to the District Court for all purposes.

### Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy by certified mail, return receipt requested, to those not registered. Written objections to this report and recommendation must be filed **within fourteen (14) days** after being served with a copy of same, unless this time period is modified by the district court. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The objecting party shall file the objections with the clerk of the court, and serve the objections on all other parties. A party filing objections must specifically identify those findings, conclusions, or recommendations to which objections are being made and the basis for such objections; the

district court need not consider frivolous, conclusory, or general objections. A party's failure to file written objections to the proposed findings, conclusions, and recommendations contained in this report shall bar the party from a *de novo* determination by the district court. *Thomas v. Arn*, 474 U.S. 140, 149-52 (1985); *Acuña v. Brown & Root*, *Inc.,* 200 F.3d 335, 340 (5th Cir. 2000). Additionally, failure to timely file written objections to the proposed findings, conclusions, and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**IT IS SO ORDERED**.

SIGNED this 30th day of July, 2020.

RICHARD B.  FARRER
UNITED STATES MAGISTRATE JUDGE